UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

BEN BANE,
GREGORY BANE, and
TRACY BANE

CASE NO. 8:09-CR-352-T-33MAP
18 U.S.C. § 371
18 U.S.C. § 1347
18 U.S.C. § 287
18 U.S.C. § 982 (forfeiture)

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT ONE
(Conspiracy)

#### A. Introduction

At times material to this Indictment:

1. The Medicare Part B Program (hereinafter "Medicare") was a health care benefit program as defined by Title 18, United States Code, Section 24(b) that provided supplemental medical insurance benefits for certain individuals, typically aged 65 years and older who were entitled to Social Security benefits (hereinafter referred to as "Medicare beneficiaries"). The Centers for Medicare and Medicaid Services (hereinafter "CMS") was an agency of the United States Department of Health and Human Services (hereinafter "HHS") and responsible for the administration of the Medicare program. CMS, in turn, contracted with Palmetto Government Benefits Administrators (hereinafter "Palmetto GBA") to serve as a fiscal intermediary on its

behalf, receive and process individual Medicare claims in the state of Florida, and determine the appropriate level of reimbursement.

2. Medicare, through Palmetto GBA, would generally reimburse 80 percent of the allowable charge for medically necessary Durable Medical Equipment or other medical services.

3 Medicare reimbursed for oxygen, portable gaseous oxygen systems and oxygen concentrators (hereinafter "oxygen related services"), but required that the beneficiary first undergo pulse oximetry testing to determine whether the services were medically necessary. In order to avoid fraud and conflicts of interest, Medicare prohibited the company which was to supply the oxygen-related services from also conducting the pulse oximetry testing. Instead, such testing was required to be conducted by a physician or an entity approved by CMS as an Independent Diagnostic Testing Facility (hereinafter "IDTF").

4. A Certificate of Medical Necessity (hereinafter "CMN") was a form required by Medicare regulations to establish the medical necessity of the proposed treatment. Parts of that form were required to be completed by the treating physician or the physician's employee. A CMN was required to be submitted to the fiscal intermediary along with a claim for reimbursement.

5. Defendant BEN BANE owned and operated Bane Medical Services, Inc. (hereinafter "BMS"), and Oxygen and Respiratory Therapy, Inc. (hereinafter "ORT"), both Florida corporations engaged in the business of providing home oxygen-related services. BMS had offices in various locations within the Middle District of Florida,

including Plant City, St. Petersburg, and Kissimmee/Saint Cloud, Florida. ORT had offices in Sebring and Sarasota, Florida. ORT did business as BMS.

6. Defendant GREGORY BANE was Vice President of Operations for BMS and ORT.

7. Defendant TRACY BANE was the billing supervisor for BMS.

8. Michelle Tehan owned and operated Advanced Family Diagnostic Center, Inc. (hereinafter "AFDC"), a Medicare IDTF.

9. Douglas Wilson was a licensed respiratory therapist who owned and operated Pulmonary Diagnostics, Inc. (hereinafter "PDI"), a Medicare IDTF.

### B. The Conspiracy

10. Beginning at least as early as in or about January 2001 and continuing through in or about December 2004, in the Middle District of Florida, and elsewhere,

BEN BANE,
GREGORY BANE, and
TRACY BANE,

defendants herein, did combine, conspire, confederate and agree with each other, with Douglas Wilson, Michelle Tehan, Theresa Veach and with other individuals, both known and unknown to the Grand Jury, to:

    a. Defraud the United States by impeding, impairing, obstructing and defeating by deceit, trickery and dishonest means, the lawful governmental functions of HHS and CMS in the administration and oversight of the Medicare program; and

    b. Commit offenses against the United States, namely;

        (1) Knowingly and willfully executing a scheme and artifice to defraud a health care benefit program affecting commerce in connection

3

with the delivery of and payment for health care benefits, items and services in violation of Title 18, United States Code, Section 1347;

  (2) Making materially false and fraudulent statements and writings in matters within the jurisdiction of the executive branch of the Government of the United States in violation of Title 18, United States Code, Section 1001; and

  (3) Knowingly and willfully making and presenting false, fraudulent and fictitious claims in violation of Title 18, United States Code, Section 287.

### C. Manner and Means

11. The manner and means utilized to accomplish the objects of the conspiracy included, among others, the following:

12. It was part of the conspiracy that defendants would and did instruct and cause BMS and ORT employees to conduct pulse oximetry testing on Medicare beneficiaries to whom they planned to supply oxygen-related services.

13. It was further a part of the conspiracy that Michelle Tehan and Douglas Wilson would and did submit claims for reimbursement to CMS through First Coast Service Options (FCSO) for the aforementioned tests, thereby creating the illusion that their companies and not BMS and ORT employees had conducted the aforementioned pulse oximetry tests.

14. It was further a part of the conspiracy that the defendants, on numerous occasions, would and did falsify and fabricate and cause to be falsified and fabricated, pulse oximetry test results in order to create the illusion that certain Medicare beneficiaries were in need of and qualified for Medicare reimbursement for oxygen therapy and oxygen-related services.

15. It was further a part of the conspiracy that conspirators would and did, on numerous occasions, place and cause to be placed, false and fraudulent data and forged physician signatures on CMNs and cause the same false data to be submitted to CMS through Palmetto GBA.

16. It was further a part of the conspiracy that the defendants would and did submit and cause to be submitted, numerous claims for reimbursement to CMS through Palmetto GBA for oxygen-related services supplied by BMS and ORT to Medicare beneficiaries when employees of those companies and not IDTFs had conducted the pulse oximetry testing on those Medicare beneficiaries.

17. It was further a part of the conspiracy that the conspirators would and did submit and cause to be submitted numerous claims for reimbursement to CMS through Palmetto GBA for oxygen-`related services supplied by BMS and ORT to Medicare beneficiaries when, in fact, such services were not medically necessary.

18. It was further a part of the conspiracy that the conspirators would and did fraudulently obtain more than $5,000,000 from Medicare.

19. It was further a part of the conspiracy that the conspirators would and did conduct their activities in a manner calculated to conceal the fraudulent nature of their scheme.

## D. Overt Acts

20. In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed the following acts in the Middle District of Florida, and elsewhere:

   a. In or about the fall of 2000, a conspirator spoke with Douglas Wilson and discussed a plan where PDI would submit claims to Medicare for pulse oximetry testing actually performed by BMS and ORT employees.

   b. In or about June 2001, Michelle Tehan agreed with a conspirator to a plan in which AFDC would submit claims to Medicare for pulse oximetry testing actually conducted by BMS and ORT employees.

   c. On or about January 15, 2002, Douglas Wilson submitted a claim to CMS through FCSO in the amount of $29.00, purportedly for pulse oximetry testing conducted by PDI.

   d. On or about July 23, 2002, conspirators purchased ProFox software.

   e. On or about October 28, 2002, Douglas Wilson submitted a claim to FCSO in the amount of $29.00, for pulse oximetry testing purportedly conducted by PDI.

   f. On or about November 1, 2002, a conspirator fraudulently caused PDI to be listed on a CMN relating to Helon Siringer as the company which conducted pulse oximetry testing.

g. On or about November 6, 2002, Douglas Wilson submitted a claim to CMS through FCSO in the amount of $29.00, for pulse oximetry testing purportedly conducted by PDI.

h. In or about the Fall of 2002, defendant BEN BANE instructed a BMS employee that he was to write the word "lab" in the "delivered by" column of the BMS log even though the testing devices were actually delivered to the beneficiaries by the BMS drivers.

i. On or about June 25, 2003, Michelle Tehan submitted a claim to CMS through FCSO in the amount of $29.00 for pulse oximetry testing purportedly conducted by AFDI.

j. In or about November 2003, defendant GREGORY BANE taught Theresa Veach how to change computerized test results in order to "qualify" Medicare beneficiaries for oxygen-related services where in fact, such services were not medically necessary.

k. On or about December 10, 2003, Douglas Wilson submitted a claim to CMS through FCSO in the amount of $29.47 for pulse oximetry testing purportedly conducted by PDI.

l. On or about May 18, 2004, a conspirator altered the results of the pulse oximetry test of Medicare beneficiary Marilyn Dickson by changing, among other things, the name on the document to Medicare beneficiary Jerry Martin.

m. On or about July 14, 2004, defendant TRACY BANE forged a physician's signature to a CMN relating to Medicare beneficiary Ruth Beckett.

n.  On or about July 16, 2004, conspirators caused a Medicare claim in the amount of $326.50 relating to beneficiary Ruth Beckett to be submitted to CMS through Palmetto GBA.

o.  On or about September 28, 2004, the conspirators caused a Medicare claim in the amount of $328.50 to be submitted to CMS through Palmetto GBA.

p.  On or about September 29, 2004, conspirators caused a Medicare claim in the amount of $62.00 to be submitted to CMS through Palmetto GBA.

q.  On or about November 29, 2004, conspirators caused a Medicare claim in the amount of $328.50 to be submitted to CMS through Palmetto GBA.

r.  In or about December 2004, defendant GREGORY BANE fabricated "at rest" pulse oximetry test results.

s.  In or about December 2004, defendant GREGORY BANE erased copies of pulse oximetry tests from computers.

t.  In or about December 2004, defendant GREGORY BANE and other conspirators met at the home of defendant BEN BANE and fabricated a series of pulse oximetry test results.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SIX
(Health Care Fraud Counts)

### A. Introduction

1. The allegations contained in paragraphs 1 through 9 of Count One of this Indictment are hereby re-alleged and incorporated by this reference as if fully set forth herein.

### B. The Scheme and Artifice

2. Beginning at least as early as or about August 2002 and continuing through in or about December 2004, in the Middle District of Florida,

BEN BANE,
GREGORY BANE, and
TRACY BANE,

defendants herein, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, that is, the Medicare Program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of, a health care benefit program affecting commerce, that is, the Medicare Program, in connection with the delivery of and payment for health care benefits, items and services.

### C. Manner and Means

3. The manner and means of the aforementioned scheme and artifice is described in paragraphs 12 through 19 of Count One of this Indictment, the allegations of which are hereby re-alleged and incorporated by this reference as if fully set forth herein.

### D. Execution of the Scheme

4. On or about the dates set forth below, in the Middle District of Florida,

BEN BANE,
GREGORY BANE, and
TRACY BANE,

defendants herein, did execute and attempt to execute the aforementioned scheme and artifice by knowingly and willfully causing each of the following Medicare claims for reimbursement to be submitted to Palmetto GBA knowing each such claim was not eligible for Medicare reimbursement:

| COUNT | PATIENT | AMOUNT OF CLAIM | CLAIM DATE |
|---|---|---|---|
| Two | Robert Bruce | $328.50 | 8/15/04 |
| Three | Beatrice Gartenberg | $328.50 | 8/29/04 |
| Four | Helon Siringer | $328.50 | 9/1/04 |
| Five | Gwendolyn Love | $328.50 | 9/27/04 |
| Six | Claude Lewis | $328.50 | 10/28/04 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNTS SEVEN THROUGH TEN
(False Claim Counts)

1. The allegations contained in Paragraphs 1 though 9 and 11 through 19 of Count One of this Indictment are realleged and incorporated by this reference as though fully set forth herein.

2. On or about the dates set forth below in each count, in the Middle District of Florida,

BEN BANE,
GREGORY BANE, and
TRACY BANE,

defendants herein, did knowingly and willfully make and present and cause to be made and presented to CMS, an agency of the United States, through Palmetto GBA, each of the following Medicare claims for reimbursement, knowing each individual claim to be materially false, fictitious and fraudulent in that each claim sought reimbursement for oxygen-related services whereas, as the defendants well knew and believed, said claims were not eligible for Medicare reimbursement.

| COUNT | PATIENT | AMOUNT OF CLAIM | CLAIM DATE |
|---|---|---|---|
| Seven | Claude Lewis | $328.50 | 8/28/04 |
| Eight | Beatrice Gartenberg | $328.50 | 9/29/04 |
| Nine | Helon Siringer | $328.50 | 10/1/04 |
| Ten | Ruth Beckett | $ 62.00 | 10/16/04 |

In violation of Title 18, United States Code, Sections 287 and 2.

## FORFEITURES

1. The allegations contained in Count One through Count Ten of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provision of Title 18, United States Code, Section 982.

2. From their engagement in any or all of the violations alleged in Counts One through Ten of this Indictment, in violation of Title 18, United States Code, Sections 371, 287, and 1347, the defendants, BEN BANE, GREGORY BANE and TRACY BANE, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any and all right, title, and interest they may have in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense including but not limited to the following:

A sum of money equal to $5,000,000 in United States currency, which represents the amount of proceeds obtained as a result of such offenses, for which the defendants are jointly and severally liable.

3. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

4.  Property subject to forfeiture as substitute assets includes, but is not limited to, the following:

    a.  The real property, including all improvements thereon and appurtenances thereto, located at 8914 Stone Harbour Loop South, Bradenton, Florida 34212, which is legally described as follows:

    Lot 601, STONEYBROOK AT HERITAGE HARBOUR, SUBPHASE C, UNIT 2, according to the plat thereof recorded in Plat Book 44, Page 74, of the Public Records of Manatee County, Florida.

    Parcel Identification Number: 1102041509.

    b.  The real property, including all improvements thereon and appurtenances thereto, located at 2625 Crestfield Drive, Valrico, Florida 33596, which is legally described as follows:

    Lot 1, Block 3, BUCKHORN SECOND ADDITION UNIT 2, according to the map or plat thereof as recorded in Plat Book 63, Page 16, of the public records of Hillsborough County, Florida.

    Parcel Identification Number: 087258.0750.

    c.  The real property, including all improvements thereon and appurtenances thereto, located at 13418 U.S. Highway 19, Hudson, Florida 34667, which is legally described as follows:

    Lots 7 and 18, Block 1, GULF VIEW TERRACE NO. 2, according to the map or plat thereof, as recorded in Plat Book 6, Page 3, of the Public Records of Pasco County, Florida.

    Parcel Identification Number: 34-24-16-0020-00100-0070.

d.  The real property, including all improvements thereon and appurtenances thereto, located at 3213 Polo Place, Plant City, Florida 33566, which is legally described as follows:

    Lots 9 & 10, WALDEN LAKE UNIT 34/35, according to plat thereof recorded in Plat Book 61, Page 37, of the Public Records of Hillsborough County, Florida.

    Parcel Identification Numbers: 203274.9128 and 203274.9130.

e.  The real property, including all improvements thereon and appurtenances thereto, located at 216 Jerry Smith Road, Dover, Florida 33527, which is legally described as follows:

    The Southeast 1/4 of the Southwest 1/4 of Section 23, Township 29 South, Range 21 East, Less road rights-of-way.

    Parcel Identification Number: U-23-29-21-ZZZ-000004-11800.0.

f.  The real property, including all improvements thereon and appurtenances thereto, located at 206 North Mobley Street, Plant City, Florida 33563, which is legally described as follows:

    The South 67.9 feet of Lots 5 and 6 of Block D of HIGHWAY HEIGHTS, according to the map or plat thereof, as recorded in Plat Book 7, at Page 55, of the Public Records of Hillsborough County, Florida.

    Parcel Identification Number: P-30-28-22-5DL-000000-00005.0.

g. Lots 7 and 8 of Block D of HIGHWAY HEIGHTS, according to the map or plat thereof, as recorded in Plat Book 7, at Page 55 of the Public Records of Hillsborough County, Florida.

A TRUE BILL,

_____
Foreperson

ROBERT E. O'NEILL
United States Attorney

By: _____
ROBERT A. MOSAKOWSKI
Assistant United States Attorney

By: _____
THOMAS N. PALERMO
Assistant United States Attorney

By: _____
ROBERT T. MONK
Assistant United States Attorney
Deputy Chief, Economic Crimes Section

FORM OBD-34
APR 1991

No. 8:09-cr-352-T-33MAP

# UNITED STATES DISTRICT COURT

Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

BEN BANE,
GREGORY BANE, and
TRACEY BANE

## SUPERSEDING INDICTMENT

Violations:

18 U.S.C. § 371 - Conspiracy
18 U.S.C. § 1347 - Health Care Fraud
18 U.S.C. § 287 - Making False Claims

A true bill,

_____
Foreperson

Filed in open court this 26th day
of October, 2010.

_____
Clerk

Bail $ _____

FILED

10 OCT 26 PM 2:34

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

GPO 863 525

N:\_Criminal Cases\B\Bane Medical Services_2004R01593\f_superseding Indictment Back.frm